**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

      v.

                                                        18-CR-044-RJA-HKS
                                                       **DECISION AND ORDER**

JAMES L. NELSON,

           Defendant.
_____

The Defendant moves, pursuant to 18 U.S.C. § 3145(b), to revoke Magistrate Judge H. Kenneth Schroeder, Jr.'s order detaining the Defendant pending trial. After *de novo* review, and for the reasons stated below, the Defendant's motion is denied.

## BACKGROUND

The Defendant is charged in a three-count indictment with committing several narcotics offenses within 1,000 feet of a school, all in violation of 21 U.S.C. § 860(a). The Court assumes familiarity with the allegations in this case, as well as the parties' arguments for and against detention.

## DISCUSSION

**1. The Bail Reform Act's standard for pretrial detention**

The Court reviews Judge Schroeder's detention order *de novo*. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

The Bail Reform Act "requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless [the court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *United States v. Sabhnani*, 493 F.3d 63, 75 (2d

1

Cir. 2007) (quoting 18 U.S.C. § 3142(b)). If a court determines that release on a recognizance bond would not "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," § 3142(c), "the law still favors pre-trial release," *Sabhnani*, 493 F.3d at 75, "subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

If, however, a court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." 18 U.S.C. § 3142(f). The standard of proof by which a court must make detention findings depends on the basis for the Government's detention motion: If the Government seeks detention based on a defendant's danger, "[t]he facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f). In other words, "the evidence must support a conclusion of danger to the community 'with a high degree of certainty.'" *United States v. Enix*, 209 F. Supp. 3d 557, 563 (W.D.N.Y. 2016) (quoting *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985)). If, on the other hand, the Government seeks detention based on a defendant's flight risk, the Government must first prove by a preponderance of the evidence that "the defendant presents a risk of flight." *Sabhnani*, 493 F.3d at 68 n.5. If the Government does so, it must then prove by a preponderance of the evidence that "there are [no] conditions or a combination of conditions which reasonably will assure the

2

presence of the defendant at trial if he is released." *United States v. Shakur*, 817 F.2d 189, 194-95 (2d Cir. 1987).

When a person is charged with committing certain narcotics offenses (among other crimes), the Bail Reform Act imposes "a presumption . . . that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). The charges in this case trigger these presumptions. 18 U.S.C. § 3142(e)(3)(A).[1]

"In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut [the statutory] presumption[s] by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* Thus, "[e]ven in a presumption case, the government retains the ultimate burden of persuasion." *Id.*

To determine whether the Defendant has rebutted the presumptions of dangerousness and flight, the Court considers the four factors listed in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, such as his family ties, employment, community ties, and past conduct; and (4) the nature and

---

[1] "[T]he presence of an indictment returned by a duly constituted grand jury conclusively establishes the existence of probable cause for the purpose of triggering the rebuttable presumptions set forth in § 3142(e)." *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985).

seriousness of the danger to the community, or to an individual, that the Defendant's release would present. *See Mercedes*, 254 F.3d at 436.

## 2. Application to the facts of this case

### A. The nature and circumstances of the crimes charged

The possible forty-year sentence the Defendant faces if he were convicted of the charges in the indictment demonstrates the seriousness of those charges. *See* 21 U.S.C. § 860(a) (doubling maximum penalty for underlying drug crime); § 841(b)(1)(C). To be sure, the Defendant asserts—and the Government does not dispute—that, if the Defendant were to accept a plea agreement, the U.S. Sentencing Guidelines would likely recommend a sentence well below the statutory maximum. But even that penalty would be longer than any sentence the Defendant has served in several decades.

The circumstances of the charged offenses are also serious. The Defendant is alleged to have sold crack cocaine and marijuana across the street from a school; the potential harms from that conduct are obvious. The Defendant attempts to minimize this alleged conduct, noting that the amount of crack cocaine found in his house was only 3.2 grams, which "amounts to less than one teaspoon of sugar." Docket No. 23 at 4. This may be true, but given the drug-distribution paraphernalia found in the Defendant's home, together with the two controlled cocaine sales made shortly before the Defendant's home was searched, the Defendant's argument does little to undermine the serious nature of his alleged conduct.

Thus, the nature and circumstances of the crimes charged strengthen the presumptions that apply in this case.

### B. The weight of the evidence against the Defendant

The weight of the evidence against the Defendant appears to be strong. The narcotics at issue were found in the Defendant's home, together with two digital scales and a number of small capsules "commonly used for [narcotics] distribution." Docket No. 1 ¶ 8. Moreover, the Defendant—who has been unemployed for the past 11 years—allegedly had roughly $1,400 in cash under the bed in his home's master bedroom. All of this is strong circumstantial evidence that the Defendant was engaged in narcotics trafficking. This conclusion is supported by the fact that, according to the Government, the Defendant made two controlled sales of cocaine shortly before his home was searched. Docket No. 25 at 5.

In addition to this evidence, over 200 pills—containing a variety of painkillers—were found in the Defendant's home. Although the indictment does not charge the Defendant with distribution of those narcotics, the number and variety of painkillers—together with the fact that the Defendant allegedly sold painkillers in several controlled sales in 2016—strengthens the Government's argument that the Defendant was, in fact, selling the controlled substances charged in the indictment.

In considering the strength of the evidence, the Court is mindful that its role "is not to determine guilt or innocence." *United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008). Instead, the Court's purpose is only to assess "'the likelihood that the person will fail to appear or will pose a danger to any person or to the community.'" *Id.* (quoting *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)). Judged by that standard, the strength of the evidence supports the presumptions that apply in this case.

### C. The Defendant's history and characteristics

The Defendant is 62 years old, has lived in the Buffalo area for the past 33 years, and has been with his fiancé for approximately 19 years. The Defendant, who has been unemployed for the past 11 years, supports himself with Social Security Disability benefits.

It is obvious that the Defendant is in poor health. The Defendant had a stroke in 2008, and he has had two "mini-strokes" since he was detained in this case. In addition, the Defendant uses a wheelchair, requires a low-sodium diet, takes 11 medications, and claims to be in extensive pain. The Defendant also has a clear drinking and drug problem: He generally drinks a pint of liquor per day, and he regularly uses Xanax, Valium, marijuana, crack cocaine, and several other painkillers.

The Defendant's criminal history spans the past 40 years. At oral argument, defense counsel argued that most of the Defendant's criminal record, while not insignificant, is not serious. The Court agrees that, with the exception of a 1976 conviction for sexual battery, most of the crimes of which the Defendant has been convicted are, individually, not especially serious. But what is troubling—and what strengthens the statutory presumption of dangerousness—is that the Defendant has had regular interaction with the criminal justice system for over 40 years.

To be sure, the Defendant has had several lengthy breaks in his criminal activity. This fact is undermined, however, by the Defendant's recent conduct: In the six months before his arrest in this case the Defendant was charged with narcotics offenses (among other crimes) *three* different times. And what is even more troubling is that the Defendant was arrested in this case while his three most recent narcotics charges were still pending.

In other words, the Defendant's recent record does not show that he recognizes the importance of following conditions of release or supervision, nor does his record provide a reasonable assurance that his arrest in this case will deter him from continuing to sell drugs on release.

### D. The nature and seriousness of the danger if the Defendant were released

If the Defendant were released, the primary risk of danger would, given the allegations in this case and the Defendant's recent history, be the obvious "harm to society caused by narcotics trafficking." *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985). This harm is compounded by the fact that the Defendant allegedly sold drugs across the street from a school. The Court recognizes that the Defendant is not alleged to have sold narcotics to students. But it is still troubling that the Defendant provided a source of narcotics across the street from a school. And, of course, violence and narcotics trafficking often go hand-in-hand; introducing that risk so close to a school presents unacceptable dangers.

\*   \*   \*

After carefully considering the facts proffered by the Government, the evidence brought forward by the Defendant, the factors set forth in 18 U.S.C. § 3142(g), and the statutory presumptions that apply in this case, the Court, upon *de novo* review, affirms Judge Schroeder's detention order.

The apparent strength of the Government's case, together with the nature and circumstances of the crimes charged, buttress the statutory presumption that no condition or combination of conditions could reasonably ensure the Defendant's presence as required. The Defendant, however, has introduced evidence that easily rebuts this

7

presumption: He has strong ties to the community, modest means, and is in poor health. These facts collectively make it very unlikely that the Defendant will attempt to evade prosecution.

It is a closer question whether the Defendant has brought forth evidence rebutting the presumption that no condition or combination of conditions can reasonably ensure the safety of the community and others. The conduct with which the Defendant is charged—selling drugs across the street from a school—poses an obvious danger to the community. In assessing this danger, the Court has considered that, if he were released, the Defendant proposes living with his fiancé, rather than in a home near a school. This proposed condition somewhat mitigates the Court's concern that the Defendant's release would present a danger to the community.

But, on the whole, the Court is not persuaded that the Defendant's proposed condition is sufficient to reasonably protect the community. If he were released, the Defendant might not be in a position to sell drugs near a school, but his lengthy criminal record and his recent history suggest that the Defendant does not fully appreciate the need to refrain from illegal conduct, particularly when he has been released on bail. In other words, even if the Defendant would not be able to sell drugs near a school, the Defendant's record does not give the Court reasonable confidence that he would not continue to sell drugs in a new neighborhood. That risk poses an obvious danger to the community, regardless of where it occurs.

Balanced against these facts is the Defendant's undisputedly poor health. The Court is sympathetic to this fact, and the Court understands that it is more difficult for the Defendant to obtain appropriate medical treatment in prison. But the question under the

8

Bail Reform Act is whether this evidence undercuts the Government's strong argument that no condition or combination of conditions can reasonably ensure the safety of the community. The Court is not persuaded that the Defendant's poor health has any significant bearing on the potential danger his release would pose, particularly given that his health did not prevent him from allegedly committing a number of crimes in the recent past. In other words, nothing in the Defendant's record gives the Court reasonable assurances that, if the Defendant were to receive better medical treatment on release, he would not engage in crimes—in particular, narcotics trafficking—that endanger the community.

## CONCLUSION

After *de novo* review, the Court concludes that the Government has met its burden of showing that no condition or combination of conditions can reasonably ensure the safety of any other person and the community. The Defendant's motion to revoke Judge Schroeder's detention order is therefore denied.

**SO ORDERED.**


Dated: June 12, 2018                      ___*s/Richard J. Arcara*___
    Buffalo, New York             HONORABLE RICHARD J. ARCARA
                                                         UNITED STATES DISTRICT JUDGE